## THE STATE v. WEAR, *Appellant*.

### In Banc, June 25, 1898.

1. **Criminal Law:** SPECIAL JUDGE: SELECTION BY DEFENDANT AND PROSECUTING ATTORNEY. The provision of the statute (R. S. 1889, sec. 4177) giving the defendant and prosecuting attorney, when the regular judge knows himself to be disqualified, the right by agreement in writing, to select a special judge to try a criminal case, is merely permissive, and if they do not attempt to exercise the right the judge has authority to call in the judge of a neighboring circuit to try the cause.

2. ————: ————: ————: RULINGS OF SUCH JUDGE. But where the record shows that such special judge has been selected by written agreement between the defendant and prosecuting attorney, his rulings while presiding in said cause are entitled to the same faith and credit as if made by a regular elected and qualified judge.

3. ———: THREE CONTINUANCES BY THE STATE: DISCHARGE. The record in this case shows that the regular judge was disqualified because the defendant was his son; that the defendant and prosecuting attorney, by agreement in writing, selected one Mauldin as a special judge to try the case; and that defendant, after indictment and such selection, was held to answer on bail. 'The judgment recites that he was not brought to trial before the end of the third term of the court in which the cause was pending after such indictment; that the delay in bringing him to trial did not result from his application, but at the instance and on the application of the State; and that said delay was not occasioned by the want of time on the part of the court to try the cause at the third term or any prior term. *Held*, that under the statute, defendant was entitled to be discharged and acquitted of the offense. *Held*, also, that this judgment could be pleaded in bar in a subsequent attempt to convict him under a subsequent indictment for the same offense.

*Held* by GANTT, C. J., *dissenting*, that the plea in bar of this judgment was insufficient, because it did not aver that the continuance at the third term was not for good statutory cause; *and*, that a defendant, held to answer on bail, is not entitled to discharge even at the third term, if the State can show the statutory cause for a continuance.

4. ———: ———: ———: VALIDITY OF JUDGMENT: RECITALS THEREIN: PRESUMPTIONS. The judgment, pleaded by defendant in bar to a further prosecution in this case, was rendered by a court of general jurisdiction, having jurisdiction of the subject-matter and of defendant, and recites that "said defendant has not been brought to trial before the end of the third term," etc. *Held*, that the judgment was not void, could not be collaterally attacked, and could not be appealed from, but was final; *also*, that since the judgment contained this recital and discharged the defendant, it was not incumbent on *him* at a trial under a subsequent indictment to show affirmatively that the case had been continued at three different terms of the court after the first indictment was found, without his fault or for want of time to try the case; *nor* that the judgment was otherwise regular. *Held*, also, that, such judgment having been pleaded in bar, it would be presumed that it was rendered *after* an order of continuance at the same term had been set aside; *and*, that, where the record showed a continuance at a previous term, it would be presumed, as nothing appeared to the contrary, that the continuance was on the application of the State.

5. ———: ———: ———: ———: COLLATERAL ATTACK. Where a judgment recites a state of facts not shown by the previous records of the case, such judgment can not be inquired into in a collateral appeal, unless such facts were jurisdictional.

State v. Wear.

6. ———: ———: ———: DUTY OF DEFENDANT TO DEMAND TRIAL. The defendant is not required to demand a trial at any term of court, before he can invoke his discharge, under the statute, on the ground that he has not been "brought to trial before the end of the third term."

Held by GANTT, C. J., dissenting, that a defendant when on bail, must demand a trial or resist postponement of his case, before the State can be charged with laches.

7. ———: ———: JUDGMENTS OF COURTS: PRESUMPTIONS. Superior courts proceeding according to the course of the common law, are presumed to proceed by right and not by wrong. And where a judgment of such a court is attacked on a collateral appeal, it will be presumed that every necessary requirement of the law had been met before such judgment was rendered.

8. ———: ———: ———: JUDGMENT OF DISCHARGE. Where the defendant has a judgment of discharge in his favor, the burden is on the State in a subsequent proceeding to show that the judgment was void.

9. ———: ———: ———: ———: PURPOSE OF STATUTE. The purpose of the statute discharging one charged of crime unless, without his fault or for want of time in the court, he is brought to trial before the end of the third term, is to make effective that part of the Bill of Rights which declares that "in criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury of the county."

10. ———: POWERS OF LEGISLATURE. Unless prohibited by the Federal or State Constitutions, the legislature of this State has the same unfettered powers that belong to the British Parliament.

11. ———: CONTINUANCE: LOSS OF JURISDICTION. By a continuance a court does not lose jurisdiction of a case.

12. ———: ———: BEFORE JUDGMENT: IRREGULARITY. If necessary to sustain a judgment it will be presumed that an order of continuance was set aside before the judgment was rendered. But whether the continuance was set aside or not before the rendition of judgment, the court by such continuance does not lose jurisdiction of the defendant or of the subject-matter, and hence such judgment is not void, and can not be collaterally attacked, and can be criticised on appeal or writ of error only for having been prematurely rendered, or as being out of time, or irregular.

13. Judgments: WHEN OPEN TO COLLATERAL ATTACK. Where a court has clearly acquired jurisdiction of the subject-matter and person of defendant, its judgment can not be collaterally attacked. But where a court in reality has no jurisdiction, it is proper to show such fact and that the judgment is void, by other parts of the record than the judgment itself.

State v. Wear.

*Held* by GANTT, C. J., *dissenting*, that the judgment of a circuit court may be impeached by its own record in the case and if that judgment is pleaded in bar to a further prosecution under another indictment, it is competent for this court, in deciding the sufficiency of the plea, to ascertain whether or not other record entries in the case contradict the judgment. If the judgment of discharge recites that three continuances were had on the application of the State, and other record entries affirmatively show that these recitals were not true but were made in defiance of the record, the plea in bar should be denied. *Held*, further, that in this case the record affirmatively shows that the recital in the judgment that three continuances were had on the application of the State, was in fact untrue and that the defendant was not therefore entitled to his discharge.

14. **Practice**: REFUSAL TO ENTER NOLLE: RECITAL IN RECORD. The refusal of the trial court to permit the prosecuting attorney to enter a *nolle prosequi* is a matter for exception, and can only be preserved in a bill of exceptions, and the bare recital of such refused in the record by the clerk is no evidence that such *nolle* was offered or refused.

15. ——: ——: CONTINUANCES: IRREGULARITIES: HOW REACHED. Where the jurisdiction of a court is once lawfully acquired, its jurisdiction is not ousted by a continuance, but continues until a final disposition of the cause. The jurisdiction to decide right, necessarily embraces the power to decide wrong, and a wrong decision, though voidable by appeal or writ of error, can not be collaterally attacked, but is equally binding with a right one.

16. **Criminal Practice**: OFFER TO NOLLE: CONTINUANCE. A prosecuting attorney waives the right of the State to except to the action of the trial court in refusing to permit him to enter a *nolle prosequi*, by afterward applying for a continuance.

*Held* by GANTT, C. J., that the prosecuting attorney's right to enter a *nolle* is absolute, without permission of the court.

*Appeal from Butler Circuit Court.*—HON. HENRY C. RILEY, Judge.

REVERSED AND DEFENDANT DISCHARGED.

*Louis F. Dinning* and *Henry N. Phillips* for appellant.

(1) The circuit court had jurisdiction to render the judgment of discharge; it also had jurisdiction of the defendant, and said judgment can not be attacked

collaterally. *Yates v. Johnson*, 87 Mo. 213; *Forder v. Davis*, 38 Mo. 108; *Pentz v. Kenster*, 41 Mo. 447; *Gray v. Bowles*, 74 Mo. 419; *Karnes v. Alexander*, 92 Mo. 660; *Carpenter v. King*, 42 Mo. 219; *State v. Evans*, 83 Mo. 319; *Lewis v. Gray*, 66 Mo. 614; *Henry, v. Mc-Kerdie*, 78 Mo. 416; *Scott v. Crews*, 72 Mo. 263; *State v. Weathersby*, 45 Mo. 17; *Jeffries v. Wright*, 51 Mo. 220; *Burke v. City of Kansas*, 118 Mo. 309; *State ex rel. v. Smith*, 104 Mo. 419; *State ex rel. v. Neville*, 110 Mo. 345; *Musick v. Railroad*, 114 Mo. 309; *Leonard v. Sparks*, 117 Mo. 103. A number of the decisions above quoted were rendered by the circuit court and in every instance the court was exercising statutory jurisdiction and enforcing statutory rights. (2) Any court having once acquired jurisdiction over the subject-matter and person never loses it by any possible error it may commit. *State to use Perry v. Towl*, 48 Mo. 148. The test of jurisdiction is whether the tribunal has power to enter upon inquiry and not whether its conclusions in the course were right or wrong. *Colton v. Beardsley*, 38 Barb. 29; Vanfleth on Collateral Attack, pp. 82, 83, 84, 85; *Tallman v. McCarthy*, 11 Wis. 401. (3) The contention that the record of the circuit court had to show the three continuances, or that three terms had passed without a trial, and unless the record showed these facts the circuit court had no jurisdiction to render the judgment of discharge, is not well taken. *Tallman v. McCarthy*, 11 Wis. 401. (4) The Attorney-General seems to think that all that is written in the record books of a court in a given case is a part of the record proper. This contention is erroneous and can not find support in a single authority which we have been able to find. The file, comprising the petition, the summons and all subsequent pleadings, including the verdict and judgment, constitutes the "judgment roll" and everything else to become a part

of the record must be made such by a bill of exceptions, and the records of the circuit court, which counsel for the State claim show that the testimony was not sufficient to authorize the court to render its judgment of discharge, form no part of the record proper; therefore if the State had been entitled to an appeal from the judgment of discharge, any entries in the record books of the Dunklin county circuit court, except as above stated, in order to become a part of the record proper, would have to be made so by a bill of exceptions. *State ex rel. v. Scott*, 104 Mo. 31; *Land Co. v. Bretz*, 125 Mo. 423; *Pardon v. Dwire*, 23 Ill. 572. (5) Counsel for the State assert that "the prosecuting attorney had the right to enter a *nolle prosequi* at any time before the jury was sworn." This I admit with this qualification: that he had a right to enter a *nolle prosequi* with the consent of the court. Even if I were to concede that he had a right to enter a *nolle prosequi* without the consent of the court, it would not follow that when he asked leave to enter a *nolle prosequi*, and the same was refused by the court, that the court thereby lost its jurisdiction over the defendant and over the indictment. *Ex parte Donaldson*, 44 Mo. 154; R. S. 1889, sec. 4217; *State v. Nutting*, 39 Me. 361.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) When the defendant is on bail and seeks to be discharged under this statute, he must, in order that a term of court shall count, appear and demand a trial at such term, and if the record does not show that he did so, it will be presumed that the case was continued by the consent of the State and the defendant. *Watson v. People*, 27 Ill. App. 495; *Gallagher v. People*, 88 Ill.

335; *Stewart v. State*, 13 Ark. 720; *Cooper v. Sunderland*, 66 Am. Dec. 61; *Denning v. Corwin*, 11 Wend. 647; *Jackson v. Estey*, 7 Wend. 148; *Striker v. Kelly*, 7 Hill, 11; *Thatcher v. Powell*, 6 Wheat. 119; *Gunn v. Howell*, 27 Ala. 663; *Bates v. Bank*, 8 Port, 99; *Ford v. Bank*, 9 Port, 471; *Andrews v. Bank*, 10 Ala. 375. (2) Where the record does not show that the continuances were had on the application of the State, or that the defendant was present and ready for trial, and demanding it, the court has no authority to order the defendant's discharge. *Gallagher v. People*, 88 Ill. 335; *State v. Stewart*, 13 Ark. 720. (3) The subject-matter in issue, passed upon by the circuit court in entering the judgment in question, was the discharge of the defendant by reason of the lapse of three terms of court and no trial, not occasioned by the fault of the defendant and defendant demanding a trial. *Stewart v. State*, 13 Ark. 721; 4 Tex. App. 426; *Nixon v. State*, 2 Smed & Mar. 497; 27 Ill. App. 495; 88 Ill. 335. The "subject-matter," when reference is made to questions of jurisdiction, is defined to mean: "The nature of the cause of action and the relief sought." *Blair v. Hope*, 105 Mo. 93. The definition given by this court makes the distinction very clear between the power to commence to determine a question,—to decide a question,—and the determination or decision thereof after the right attaches between the power to begin to decide, and the power to decide. *Cooper v. Sunderland*, 66 Am. Dec. 52; *Gunn v. Howell*, 27 Ala. 663; *Gunn v. Howell*, 62 Am. Dec. 785. (4) For the purpose of the exercise of this power to discharge the facts necessary to give the jurisdiction must first be shown and no presumption will arise in favor of jurisdiction until those facts are shown. *Horan v. Wahrenberger*, 58 Am. Dec. 145; *Cooper v. Sunderland*, 66 Am. Dec. 52. The general rule also prevails in this State that the question

of jurisdiction must be tried by the whole record. *Milner v. Shipley*, 94 Mo. 106. So here the recitals in the judgment must yield to the recitals in the record if there is any conflict between them. *Cloud v. Inhabitants Peirce City*, 86 Mo. 336; Freeman on Judg., sec. 125; *Ex parte Donaldson*, 44 Mo. 149. (5) If the infirmity appears in the record the judgment may be disregarded as a nullity whenever and wherever it is encountered in any proceeding, direct or collateral. *Woods v. Bryan*, 44 Am. St. Rep. 688; *Morrill v. Morrill*, 23 Am. St. Rep. 95 and note; 47 Am. Dec. 41; 9 Tex. 313; 66 Am. Dec. 52; *Hatch v. Ferguson*, 68 Fed. Rep. 45; *Seamster v. Blackstock*, 83 Va. 232; *Windsor v. McNeigle*, 93 U. S. 282. (6) The record is always open to contradict or impeach itself whether the attack be direct or collateral. 1 Black on Judg., secs. 273, 276 and 278; *Pardon v. Dwire*, 23 Ill. 572; *Starbuck v. Murray*, 5 Wend. 148. (7) The prosecuting attorney had the right to enter a *nolle prosequi* in the case at any time before the jury was sworn. *Com. v. Tuck*, 20 Pick. 356; *State v. Tufts*, 556 N. H. 138; *Com. v. Knapp*, 10 Pick. 477; 1 Abbot's Prac., p. 121; *State v. Roe*, 12 Vt. 109. (8) When the prosecution was discontinued by the prosecuting attorney appearing in court and making the request that a *nolle prosequi* be entered, no motions or proceedings could be had in the case or entertained by the court, and no order or judgment could be entered therein, the *nolle prosequi* being an end to the prosecution, so far as that particular indictment is concerned. Fitnam's Trial Procedure, sec. 543; *Cooper v. Reynolds*, 10 Wall. 308; *Seamster v. Blackstock*, 83 Va. 232.

BURGESS, J.—From a conviction in the circuit court of Butler county, of murder in the second degree and the fixing his punishment at thirty-five years in the

penitentiary, under an indictment theretofore returned against him by the grand jury of said county, for shooting to death with a pistol one Charles E. Lael at said county on the night of April 9, 1892, defendant appeals.

The homicide occurred at the city of Poplar Bluff, which is the end of a division on the Iron Mountain Railroad which passes through that city. Train crews are made up there for outgoing trains. The deceased, Charles E. Lael, was at the time in the service of the railway company as night-caller. It was a part of his duty to go to the residence or boarding places of the various members of the crew that were to go out, and awake and notify them to report at the telegraph office in time to take charge of the train.

On his return from calling a member of a crew, defendant was standing on one of the streets, having in his hands a crutch and cane, and as deceased passed him defendant struck him with one of them on the leg, when deceased pushed defendant off the sidewalk, which was a little higher than the street, into the mud, which angered him. Deceased then ran into a saloon some distance away into which Wear followed him, threatening to whip him. Lael left the saloon, and ran to the roundhouse to his headquarters. Wear applied to two different persons for a pistol but did not succeed in getting one from either of them. He however hunted for deceased, and remarked to one witness that he was looking for Ed. Lael and said, "I will get him before I quit." Perhaps an hour after Lael arrived at the roundhouse he went to where he first came in contact with Wear on the sidewalk to hunt for his hat which he lost there at that time, and upon his return to the roundhouse, Wear stepped from behind a car and said to Lael, "Are you the son-of-a-bitch that hit me?" and at once fired the shot that killed Lael.

The bullet entered the left temple, and took a downward course, resulting in almost instant death. No arms of any kind were found upon the person of deceased after his death. No witness testified to any attempt by deceased to strike Wear with his lantern or otherwise at the time he was shot.

Skinner testified that after the shooting Ed. Lucas, who had died since the killing and before the trial, said to Wear, "You have killed him," and that Wear replied, "That's what I intended to do."

Defendant testified in his own behalf. He stated that he had been notified after the first scuffle or difficulty by some person, now dead, that Lael had threatened his life, and that on his way to the Gifford Hotel, where his brother-in-law boards, the person notifying him gave him a pistol; that he took it and put it in his pocket; that he then, instead of going to the Gifford Hotel, returned to the depot and was on his way to another hotel; that he met Lael and that he, Wear, asked Lael: "What's the trouble, what is the matter with you? What did you hit me for?" That Lael replied: "I hit you once, and I will hit you again;" that he then struck him on the side of the head with the lantern and then with his fist. On cross-examination he testified that up to the time he accosted Lael and asked "what's the matter with you?" Lael had done and said nothing. He denied seeing witness Morris, who testified that he had attempted to borrow a gun from him; he denied seeing the witness Skinner, who testified to his attempt to borrow a gun prior to the killing. On redirect examination he testified that upon being struck by Lael with the lantern he drew his weapon and fired.

There are a number of questions involved in the record in this case which are of a preliminary character, involving the regularity of the proceedings, as well, also,

as the jurisdiction of the court, which will be first disposed of.

The first point raised by defendant is with respect to the *jurisdiction of Judge Riley*, before whom the trial was had, to try the cause.

On the twenty-fifth day of February, 1895, the grand jury of Butler county returned in to the circuit court of that county, the indictment under which the conviction in this case was had. At that time the Hon. John G. Wear, father of the defendant, was and ever since has been judge of said circuit court.

On the eighth day of April, 1895, the following order was made in said circuit court, to wit: "Ordered that this court do now adjourn until Saturday the fourth day of May, A. D. 1895, at 10 o'clock A. M., at which time Hon. Henry Riley, judge of the twenty-eight judicial district, be requested to sit in such cause as this court may be disqualified to sit." On the twenty-sixth day of July, 1895, to which time the Butler circuit court had been adjourned, Judge Riley assumed the bench, took charge of this case and at once directed the clerk to issue a *capias* for the defendant, which was done, the defendant arrested and brought into court. The case was then set for trial on the eighteenth day of November, 1895, and the court adjourned by Judge Riley to that time. On the eighteenth day of November, 1895, Judge Riley on account of the failure of the defendant to appear in court, set the case for trial on the twentieth day of January, 1896, to which time the case was continued and the court adjourned.

On the twentieth day of January, 1896, court convened pursuant to adjournment, Judge Riley being present. The defendant then being present in court filed his plea to the jurisdiction of the court which is, omitting the caption and name of attorneys, as follows:

"Now at this day comes the defendant and objects to the jurisdiction of the court to hear, determine or try the cause aforesaid for the reasons following, to wit:

"Because Henry C. Riley, the judge presiding over and holding the court aforesaid, for the trial of the cause aforesaid, is prejudiced against the defendant, and therefore will not grant the defendant a fair and impartial trial of this cause.

"Because the said Henry C. Riley has no jurisdiction or authority to hear or try this cause, or make any ruling on any question that may or can arise in the trial of this cause, or any preliminary matter which can or may arise in the progress of this cause preceding the trial thereof.

"Because the Hon. Henry C. Riley has no right or authority or jurisdiction to hold or preside over the court for the trial of the cause, or for the determination or decision of any question connected therewith. The said Henry C. Riley has no jurisdiction to try said cause, and the trial hereof before the said Henry C. Riley will be in violation of the 5th amendment of the Constitution of the United States in this, that the said Charles A. Wear has been put in legal jeopardy for the same offense charged against him in the indictment in this cause, and the defendant discharged therefrom by a court of competent jurisdiction; and because the trial hereof before the Hon. Henry C. Riley will be in violation of the 14th amendment of the Constitution of the United States in this, that to proceed with this cause would be to deny to defendant equal protection of the laws of the land, and in case of conviction would deprive the defendant of life or liberty without the process of law, and would be an abridgement of his privileges and immunities as a citizen of the State of Missouri.

"As a further reason this court should not proceed to the trial of this cause, because there is now pending before Judge Murphy, Judge of the Court of Criminal Jurisdiction, a writ of *habeas corpus* in which writ it is commanded that the body of the defendant be produced before said court, and the Supreme Court has issued its temporary writ of prohibition—postponing the hearing of said cause in said Supreme Court until the twenty-first of January, 1896. If said prohibition should be denied by the Supreme Court, then this court will have no jurisdiction over the body of the defendant."

The plea was overruled and defendant saved his exceptions.

It is argued by defendant that no authority was conferred upon Judge Riley to preside at the trial of this cause by reason of the order of the Butler circuit court of April 18, 1895. The same question was before this court in *State ex rel. v. Wear*, 129 Mo. 619, in which it was ruled adversely to this contention. It is true that the right of the defendant and prosecuting attorney by agreement in writing to select some attorney at law who possessed the qualifications of a circuit judge, or a special judge as provided by section 4177, and their failure to do so before Judge Wear had the authority to call on Judge Riley to try the case, was not directly passed upon in that case. But that provision of the statute is merely permissive, something over which the court or judge had no power of direction or control. The defendant and prosecuting attorney could avail themselves of it or not, just as they saw proper, and as the record does not show to the contrary, the presumption will be indulged that it was their own fault that they did not do so, and that they in fact waived the privilege. *State v. Newsum*, 129 Mo.

154. Our conclusion is that this plea was properly overruled.

On January 21, 1896, defendant filed his plea in bar.

There were two indictments found against defendant for the same offense, by two different grand juries of Butler county. The first was returned by the grand jury of said county at the May term, 1892, of said circuit court, on the ninth day of April, 1892, and was numbered 1102. The second indictment under which the trial and conviction were had before Judge Riley was returned by the grand jury of said county at the November adjourned term, 1894, on the twenty-fifth day of February, 1894, and is numbered 1312.

The plea in bar, leaving off the formal parts, is as follows:

"Now on this day, comes Charles Wear, defendant aforesaid, in his own proper person into court, and having heard the indictment in the case aforesaid read, says that the State of Missouri ought not to further prosecute the said indictment against him, the said Charles Wear, because he says that heretofore, to wit, at the May term, 1892, of the circuit court of Butler county, Missouri, the grand jurors of the State of Missouri, and the county aforesaid, duly impaneled and charged to inquire within and for the body of the said Butler county at the said May term of said court, did return into said court an indictment against this defendant, wherein he is charged with the killing of Charles E. Lael at the county of Butler aforesaid, on or about the 9th day of April, 1892, which indictment was duly filed in said court and docketed on the docket thereof numbered 1102.

"Defendant further states that the Hon. John G. Wear, judge of the circuit court of Butler county aforesaid, is the father of the defendant, and by reason

thereof is disqualified from trying this cause.    Where-
upon it was agreed in writing by and between the
defendant and the then prosecuting attorney for the
county of Butler aforesaid, that Thomas H. Mauldin,
Esquire, and he was selected as special judge to try
said cause; that the said Thomas H. Mauldin was, in
all things, legally qualified to act as said special judge;
that he was duly qualified as such and took charge of
said case, as special judge of the said Butler county
circuit court, for the trial of the said cause of the State
of Missouri v. Charles Wear; that a certified copy of
said indictment was returned into the court as afore-
said, as hereto attached, herewith filed and made a part
hereof, but afterward, to wit, on or about the 20th day
of December, 1892, the defendant filed his application
and affidavit, supported by the affidavits of two compe-
tent witnesses praying for a change of venue in said
case, for the reason that the inhabitants of the said
county of Butler, where the indictment was pending,
were so prejudiced against said defendant that he could
not have a fair trial therein, in said Butler county; that
the venue of said case might be changed to some county
where said prejudice did not exist; that the said special
Judge Mauldin, at that time presiding over the circuit
court of Butler county, Missouri, having in charge and
control the said cause of the State of Missouri v. Charles
Wear, No. 1102, being advised of and concerning said
application and affidavit, did sustain the same, and
change the venue of the said cause to the circuit court
of Dunklin county in the same circuit with Butler
county, to wit, twenty-two.    That a copy of the order
of the said circuit court of Butler county sustaining the
said application and affidavit for change of venue, and
granting the change of venue thereof to the county of
Dunklin, is hereto attached, herewith filed and made a
part hereof; that thereupon the court required the de-

State v. Wear.

fendant to enter into his recognizance to appear in the said circuit court of Dunklin county at the next term thereof, in the sum of ten thousand dollars, which bond has been fully executed, and the said cause transferred to the circuit court of Dunklin county, and docketed therein on the 10th day of March, 1893; that said cause was filed and docketed in the circuit court of Dunklin county aforesaid, on the 10th day of March, 1893; that the offense charged in the indictment No. 1102, aforesaid, in which the cause was taken as aforesaid, embraced and contained the identical charge and offense made and contained in the indictment pending here against this defendant, and no other or different offense is charged than the one charged and contained in the indictment pending against him in the above entitled cause, numbered 1312, being the same indictment to which the defendant is required to answer here; that on or about January 19th, 1893, the said circuit court of Dunklin county, having cognizance and jurisdiction over said cause therein pending on change of venue from Butler county aforesaid, wherein the State of Missouri is plaintiff and Charles Wear is defendant, charged with having killed one Charles E. Lael on or about the 9th day of April, 1892, at the county of Butler aforesaid, discharged and released the defendant of the said indictment then pending in the circuit court of the said Dunklin county, and discharged and released the said defendant from the offense in the said indictment charged and pending, a certified copy of which order and judgment record, an exemplification of which, is hereto attached and herewith filed and made a part hereof; and that said charge and offense from which defendant was discharged was the same offense and charge pending against him in the indictment in the case aforesaid, as is now pending against him in this

VOL. 145 mo—12

court, and no other offense was charged, and that the defendant in said indictment No. 1102 is the same Charles Wear, and none other, named, in said indictment. That defendant named in said indictment No. 1102, aforesaid, is the same Charles Wear who is defendant in this cause and named in the indictment here pending, and none other or different person, and is the same Charles Wear who was discharged from the indictment No. 1102 and from the offense therein charged, who is now defendant herein and named in the indictment here pending against him, the said Charles Wear. That after the indictment, which is now pending in the Butler county circuit court, was returned in said court, the said T. H. Mauldin, special judge, having charge of and jurisdiction over the same in the indictment last referred to, did on application of the defendant issue a writ of *habeas corpus* to inquire into the then detention of the said defendant by the sheriff of Butler county for the offense in the said indictment contained and alleged and caused the defendant to be brought before him; whereupon, after hearing duly had, the special judge did discharge the defendant from said indictment, and the offense therein alleged against the defendant.

"Plaintiff pleads article 5 of the amendments of United States Constitution in bar to the prosecution herein pending in the circuit court aforesaid for the alleged offense in said indictment contained and mentioned, in this, to wit:

"That the said article provides that no one shall be subject for the same offense to be twice put in jeopardy of life or limb, and no one shall be deprived of life or liberty or property without due process of law. In this, that the defendant has been discharged from the offense in the indictment charged in the indictment herein named, and placed in legal jeopardy and can

not be again tried therefor without violating said article 5, and such trial would be without due process of law.

"Defendant also pleads article 14 of the amendments to the Constitution of the United States, aforesaid, in bar to the prosecution of the said defendant on the indictment now pending in this court; because, to prosecute the defendant on said charge, after he has been discharged therefrom as above stated, is to deprive him of his liberty or life in case of conviction, without due process of law, and would deny to him the equal protection of the laws which have been guaranteed to every citizen of this State and the United States; because the same would abridge his privileges and immunities as such citizen of the State of Missouri and the United States.

"Wherefore, defendant pleads his discharge as aforesaid in bar of the prosecution of this case of the court aforesaid, in bar of the offense charged and alleged against him in the indictment now pending in the court aforesaid.

"Wherefore, defendant prays the court, by its proper entry of record, to discharge him from the prosecution of the indictment now pending in this court against him, and from the prosecution by this court for the offense alleged and charged in said indictment now pending here."

The plea in bar was subscribed and sworn to by defendant, and filed January 20, 1897.

The trial of said plea in bar coming on to be heard by the court, defendant read in support thereof a duly certified copy of the indictment number 1102, the record entry of the circuit court of Butler county made at the twentieth day of December, 1892, being the twenty-first day of the November term, 1892, of said court, showing the disqualification of Hon. John G.

Wear to preside in said cause and the agreement by the defendant and the prosecuting attorney of said county upon Hon. H. N. Phillips, special judge to try the cause and his refusal to act, an agreement in writing between the defendant and R. F. Scott the prosecuting attorney of said county upon T. H. Mauldin a member of the bar to sit as special judge to try said cause; the record of the court showing that he took and subscribed the oath required by law, and then took charge of the case. He also read an application filed by him in said court on the thirtieth day of December, 1895, for a change of the venue of said cause from said county on account of the prejudice of the inhabitants against him, an entry of record by Judge Mauldin changing the venue to Dunklin county, his recognizance in the sum of $10,000 for his personal appearance at the January term, 1895, of the circuit court of Dunklin county, on the second Monday in that month, to answer to the indictment. He then introduced and read in evidence the following record entries, made by the circuit court of Dunklin county.

"State of Missouri, } ss.
"County of Dunklin,

"In the Dunklin county circuit court, on Saturday, January 19, 1895, during the regular January term, 1895, of said circuit court, it being the sixth day thereof, the following among other proceedings were had, to wit:

"State of Missouri }
    vs.            } 646.
"Chas. Wear.       }

"Indictment for murder in first degree.

"This cause coming on to be heard, and Judge Wear, being disqualified to sit as judge herein, vacated the bench, and Hon. T. H. Mauldin, special judge in this cause, assumes the same.

"And now comes the prosecuting attorney for the State, and this 'cause is continued at the instance of the State, at its cost.' Comes now the defendant in his own proper person and by his attorney and files in this court, his motion to be discharged from the indict-ment, and the charge therein contained, which motion is as follows:

"The State of Missouri ⎫
    against      ⎬
"Chas. Wear.      ⎭

"In the circuit court of Dunklin county, Missouri, January term, 1895. Indictment for murder. Motion to discharge defendant.

" 'The defendant in his own proper person, as well as by attorney, comes and moves the court to dis-charge him from said indictment for murder in first degree, for the killing of Charles E. Lael, for which he was indicted on fifth day of May, 1892, and the offense therein charged, for the following reasons, because said defendant has not been brought to trial before the end of the third term of the said circuit court of Dunklin county in which said cause is pend-ing, after the removal of said cause by change of venue, to said Dunklin county circuit court, from the circuit court of Butler county, this State, and this defendant states that the delay in bringing said cause to trial did not happen on his application, but on the application of the State. He further states that the delay in bringing defendant to trial has not been occasioned by the want of time to try said cause at said third term of this court, nor for want of time to try said cause at any prior term thereof. '

"Said motion being taken up by the court, for adjudication and decision, and the State of Missouri appearing by W. E. Renfro, prosecuting attorney of Butler county, Missouri, and the defendant in his own

proper person and by his attorneys; and all and singular the matter and things stated in said motion being submitted to the court, the court doth find the statements therein contained to be true, that is to say, that said defendant Charles E. Wear has not been brought to trial before the end of the third term of said court of Dunklin county, in which said cause is pending after the indictment in this cause was preferred, and after the removal of said cause from the circuit court of Butler county to this court, and the court doth further find that the delay in bringing said defendant to trial did not happen on defendant's application, but at the instance and on the application of the State, and that said delay was not occasioned by the want of time on the part of this court to try said cause at the third term, or any prior term of said court.

"Now, therefore, the premises considered, it is ordered adjudged and decreed by the court, that the defendant be, and he is hereby released and discharged from said indictment, and from the offense therein charged, and that he go hence thereof without day," etc.

Defendant also read in evidence in support of his plea in bar record entries in the circuit court of Butler county, showing the discharge of defendant by Judge Mauldin under a writ of *habeas corpus* issued after his arrest on *capias* issued on the last indictment.

At the January term, 1893, the cause was on the docket of the circuit court of Dunklin county, but no evidence was offered tending to show what disposition of the cause was made at that term. The State then showed by the record of the circuit court of Dunklin county that at the July term, 1893, of that court the cause was continued generally by agreement.

The State also read in evidence the following entry of record made in said cause at the January term, 1894, of the Dunklin circuit court.

"State of Missouri
          vs.
Charles Wear.

"This cause being called and Judge Wear, being disqualified to sit in the same by reason of his being related to the defendant, vacates the bench and Hon. T. H. Mauldin, heretofore elected as special judge to try the cause, assumes the bench, and now comes the attorney for the State and files his motion asking that the cause be *nolle prosequied*, and the court after hearing the argument of counsel for both plaintiff and defendant, and after duly considering the premises, doth overrule said motion, to which ruling the attorney for the State at the time excepts, and also comes the attorney for the State and files his motion asking a forfeiture of recognizance herein. The defendant is called upon his recognizance, and now the attorney for the State having moved the court to reinstate this cause upon the docket, does by leave of the court withdraw said motion to reinstate, and the motion to take forfeiture upon defendant's recognizance is taken up, and the court after hearing argument of counsel for plaintiff and defendant, and after due consideration of the premises herein, doth order that the same be and it is overruled, to which ruling the attorney for the State at the time excepted."

The plea in bar was overruled and defendant duly excepted.

Defendant then applied for a change of venue from Judge Riley, and also for a change of venue from Butler county, both of which were overruled.

An affidavit was then filed against the sheriff by the prosecuting attorney of Butler county, in which it was alleged that the sheriff was disqualified from summoning a jury in the cause, on account of being prejudiced in favor of defendant, and asking that an elisor

be appointed for that purpose. The motion was sustained and one Jacob Carter, who was coroner of the county, appointed elisor to summon a jury, who with the approval of the court appointed one A. E. Scarsdale his deputy. Carter qualified as elisor and Scarsdale as his deputy. They both participated in summoning the panel of forty jurors, from which twelve were selected, who sit upon the trial of the cause. The return to the *venire* was signed by Carter as elisor, and everything else that was done by him or Scarsdale with respect thereto was done as elisor. A motion was made by defendant to quash the panel, upon the ground that it was summoned by persons unauthorized to do so by law. The motion was overruled and defendant duly excepted.

The trial resulted in the conviction of defendant of murder in the second degree, and the fixing of his punishment at thirty-five years imprisonment in the penitentiary. Defendant appeals.

Defendant insists that the court committed error in failing and refusing to sustain his plea in bar, in that the order discharging him by Judge Mauldin was an acquittal of the offense charged against him and a perfect defense to any other or further prosecution therefor. The section of the statute under which the order discharging defendant was made by the circuit court of Dunklin county is as follows: "If any person indicted for any offense, and held to answer on bail, shall not be brought to trial before the end of the third term of the court in which the cause is pending which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to such offense, unless the delay happened on his application, or be occasioned by the want of time to try such cause at such third term." R. S. 1889, sec. 4223.

Judge Mauldin's rulings while presiding in said

cause are entitled to the same faith and credit, as if made by a regular elected and qualified judge, and the same weight and credit should be accorded to them. *Green v. Walker*, 99 Mo. 68; *State v. Gamble*, 108 Mo. 500.

And it has been ruled by this court that an appeal does not lie in behalf of the State in a criminal case where the defendant is discharged under section 1923, Revised Statutes 1879, section 4223, Revised Statutes 1889, because he has not been brought to trial without his fault before the end of the third term of the court held after the finding of the indictment. *State v. Ashcraft*, 95 Mo. 348; *State v. Marshall*, 124 Mo. 483; *State v. Bollinger*, 69 Mo. 577.

It will be observed that the order of the Dunklin circuit court discharging defendant was made before the indictment under which he was convicted was preferred by the grand jury of Butler county, so that unless the defendant could be reindicted for the same offense and put upon his trial therefor notwithstanding said order discharging him, the plea in bar should have been sustained. This depends upon the proper construction to be given to the statute. If it simply means the discharge from the indictment then pending, which the defendant is under recognizance at the time to answer, then the order of discharge in this case was no bar to the indictment subsequently found against him and under which he was convicted, and no error was committed in overruling the plea, but if it means a discharge and *acquittance of the offense*, then error was committed in refusing to sustain the plea.

This statute section 4223, *supra*, is a special statute of limitations, and if the defendant be out on bail and be not brought to trial before the end of the third term of the court in which the cause is pending he is "entitled to be discharged so far as relates to such offense."

This is the inflexible rule fixed by the law itself when there are no delays occasioned by the defendant or for want of time by the court to try the case. And the fact that the time during which the defendant is out on bail may be extended beyond those terms by reason of continuances on his part, or on that of the court for want of time to try the case, does not do away with the statute being a statute of limitations, for such extensions of time are incident to all statutes of limitations where although the time prescribed by the statute can not be diminished, yet its running may be retarded in consequence of various circumstances occurring which the statute mentions as hindering causes.

When requisite time has elapsed and no showing is made by the State for further delay, the defendant is entitled as of right to a judgment of discharge "so far as relates to such offense." In other words he is entitled to a judgment amounting to an acquittal of the offense, and may plead it in bar as *res adjudicata*.

Under a statute of the State of *Ohio*, which provides that if the prisoner is not "brought to trial" before the end of the second term of the court held after the indictment is found, "he shall be entitled to be discharged, so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner," it was said in *Ex parte Mc-Gehan*, 22 Ohio St. 442, that "the discharge of the prisoner provided for is to be regarded, not as a mere temporary release from imprisonment, but as a discharge from prosecution for the crime or offense. It is, in effect, an acquittal, and the order granting it is a final judgment in the cause, and puts an end to all proceeding therein." *Erwin v. State*, 29 Ohio St. 186.

It does not provide that the person under indictment shall be entitled to be discharged from the indictment under which he is then under recognizance

for his appearance to answer, but expressly provides that he shall be entitled to be *discharged so far as relates to such offense*, that is, the offense charged against him in the indictment.

We take it that the statute means discharged and acquitted of the offense charged in the indictment and that such was the effect of the order of the Dunklin county circuit court in this case. Such a discharge "is equivalent to a verdict of acquittal with judgment thereon." *Johnson v. State*, 42 Ohio St. 209.

In reaching this conclusion we think it makes no difference that defendant was never in fact put in "jeopardy of life or limb," under the first indictment within the meaning of Article V of the amendments to Constitution of the United States, as the order discharging him under section 4223, *supra*, was and is an absolute acquittal of the offense, and a complete bar to any other or further prosecution against him for the same offense.

In *Indiana* a statute provides that "No person shall be held by recognizance to answer an indictment or information, without trial, for a period embracing more than three terms, not including a term at which a recognizance was first taken thereon, if taken in term time; but he shall be discharged unless a continuance be had upon his own motion, or the delay be caused by his act, or there be not sufficient time to try him at such third term, and in the latter case, if he be not brought to trial at such third term, he shall be discharged." Revised Statutes, Indiana, 1881, sec. 1783. A succeeding section is substantially like section 4224, of the Missouri Statute. Under section 1783, *supra*, it has been decided by the Supreme Court of Indiana that if the State fails to bring the defendant to trial at the term of the court pointed out by the statute, he is entitled to his discharge, and "such a discharge

amounts to an acquittal of the offense." *McGuire v. Wallace*, 109 Ind. 284.

So, also, under a statute of *Virginia*, the right of a defendant in this regard is stated in a statute which declares that, "If he be not brought to trial at or before the third term, after his examination before the justice, he shall be forever discharged of the crime unless" etc. 1 Revised Code 1819, chap. 169, sec. 28. And this right has been recognized in that State, where the statutory right conditions existed. *Vance v. Commonwealth*, 2 Va. Cases, 162; *Adcock's* case, 8 Gratt, *loc. cit.* 681; *Commonwealth v. Cawood*, 2 Va. Cases, 547.

And under the Virginia statute it has been determined that if entitled to his discharge, the defendant is to be discharged "from the crime." In *Adcock's* case it is very pertinently stated, that "the sole object and purpose of all the laws from first to last, was to insure a speedy trial to the accused, and to guard against a protracted imprisonment or harassment by a criminal prosecution, an object but little if any less interesting to the public than to him, and the means, sanctions or penalties which it employed for stimulating prosecutors and officers of the law to diligence in the prosecution, were by declaring that the consequence of a failure to indict or try in three terms should operate a discharge from the crime or acquittal" (8 Gratt, 680) unless the delay was occasioned by the defendant or want of time to try the case. It is to be noticed that our statute is equally as strong in its terms as that of Virginia. To construe it in any other way would be to nullify the statute by wiping out from it the words "*So far as it relates to such offense.*"

In *Georgia*, where the statute reads "Any person against whom an indictment is found for any offense not affecting life may demand a trial at the term when the indictment is found, or at the next succeeding term

thereafter, which demand shall be placed upon the minutes of the court; and if such person shall not be tried at the term when the demand is made, or at the next succeeding term thereafter, provided that at both terms there were jurors impaneled and qualified to try such prisoner, he or she shall be absolutely discharged and acquitted of the offense charged in the indictment'' (Hotchkiss' Stat. Laws of Georgia, 1845, 791, sec. 64), it has been held that where the defendant is not brought to trial, in conformity with statutory terms and conditions he is entitled to his absolute discharge and acquittal of the offense charged in the indictment, and several such discharges have occurred in that State. *Denny v. State*, 6 Ga. 491; *Durham v. State*, 9 Ga. 306; *Kerese v. State*, 10 Ga. 95; *Jordan v. State*, 18 Ga. 532.

In *Durham v. State*, *supra*, after quoting the concluding words of the section LUMPKIN, J., said: ''The statute is imperative and it means this or it means nothing.'' It is to be remarked that in two of the above cited cases from Georgia, the lower court refused to discharge the prisoner, but on appeal the judgment was reversed.

In *New Jersey* a different conclusion was reached as to the finality of the discharge, but that conclusion was based on a statute widely variant from our own as appears from the following quotation: ''Every indictment shall be tried the term or session in which issue is joined, or the term after, unless the court, for just cause, shall allow further time for the trial thereof; and if such indictment be not so tried, as aforesaid, the defendant shall be *discharged*.'' *State v. Garthwaite*, 3 Zab. 144. It is only necessary to compare our statute with the one just quoted to notice the marked difference between the two; the former contemplates and means a discharge ''so far as relates to such

offense," while the latter intends only a simple discharge without any finality about it.

In the *Garthwaite* case, *supra*, there is a plain intimation that if the statute of New Jersey was the same as the Georgia statute, a different conclusion would have been reached in that case.

The like view is taken in *Colorado* where the statutory provision is as follows: "If any person shall be committed for a criminal or supposed criminal matter and not admitted to bail, and shall not be tried on or before the second term of the court having jurisdiction of the offense, the prisoner shall be set at liberty by the court;" and upon this, it was determined on *habeas corpus* that the prisoner was entitled merely to be "set at liberty," and the distinction is plainly pointed out between that statute, and the one considered in *Ex parte McGehan*, 22 Ohio St. 444. *In re Garvey*, 7 Colo. 502.

Our attention has not been called to any case, nor do we believe that one can be found, where a person under indictment for a criminal offense has been discharged by a judgment of a court having jurisdiction of the defendant and of the subject-matter, was thereafter indicted and put upon trial for the same offense.

Indeed it was held by this court in *Ex parte Jilz*, 64 Mo. 205, that where a prisoner is brought before the judge of a court having authority to issue the writ, on petition for *habeas corpus*, and the judge acquires jurisdiction of the person and subject-matter, his discharge of the prisoner whether the decision be erroneous or not, being in favor of personal liberty, is final and conclusive, and that the prisoner could not be again arrested and committed on the same charge.

And in this connection it may be said: "The power to decide correctly and to enforce a decision when correctly made, necessarily implies the same

power to decide incorrectly and to enforce a decision when incorrectly made." *Davis v. Packard*, 10 Wend. 71. In passing upon a similar question in Lessée of *Paine v. Mooreland*, 15 Ohio, 444, it was said: "The distinction is between a lack of power or want of jurisdiction in the court, and a wrongful or defective execution of the power. In the first instance, all acts of the court not having jurisdiction or power, are void; in the latter, voidable only. A court then, may act (1) without power or jurisdiction; (2) having power or jurisdiction, may exercise it wrongfully; or (3), irregularly. In the first instance, the act or judgment of the court is wholly void, and is as though it had not been done. The second is wrong, and must be reversed upon error. The third is irregular, and must be corrected by motion. The latter is where the power is rightfully exercised, but in an irregular way. Hence, there is a vast distinction between a defect of power, a wrongful exercise of power, and an irregular exercise of power." Again in *Colton v. Beardsley*, 38 Barb. 52, it is said: "The test of jurisdiction is, whether the tribunal has power to enter upon the inquiry, and not whether its decision is right or wrong."

There can be no question as to the jurisdiction of the Dunklin circuit court over which Judge Mauldin was presiding as special judge, over the subject-matter and of the defendant, and the court being of general jurisdiction it will be presumed that it acted by right and not by wrong (*State ex rel. Gracy v. Bank of Neosho*, 120 Mo. 161), and also that the records of the court showed the requisite facts to entitle defendant to his discharge under the statute so far as relates to the offense with which he was charged. Section 22, article II, State Constitution, provides that "in criminal prosecutions, the accused shall have the right to a

speedy public trial," but it has been said, "Were there no statute on the subject, the courts would have the unquestionable right to intervene, where the delay, oppression and wrong were palpable." *Ex parte Donaldson,* 44 Mo. 153; *State v. Nugent,* 71 Mo. 136. The judgment discharging defendant, although it may have been erroneous can not be attacked collaterally. No appeal was or could have been taken therefrom. It was final. "The matter (as to defendant's discharge, so far as it relates to the offense for which he was under indictment) has become *res judicata,* a thing definitely settled by judicial decision; and the judgment of the court imports absolute verity." Cooley's Const. Lim. [6 Ed] 60.

Owing to the fact that an opinion has been prepared in this case by my associate Judge GANTT, which is at variance with what has been said herein, some addition observations by me seem to be necessary.

The legislation of this State is but confirmatory of our position on the construction of the section of the statute now under consideration. This section first appeared upon the statute of this State in 1835, Missouri Revised Statutes 1835, page 491, section 25. The next preceding section, 24, was in force before that time and is to be found in the Habeas Corpus Act, Laws of Missouri 1825, Volume I, page 424, section 11, and Missouri Territorial Laws 1804, Chapter 127, section 4, page 353.

In 1838, section 24, *supra,* was amended by a provision that nothing contained in that section shall be construed so as to entitle any person indicted to be discharged when the delay in bringing the trial shall be occasioned by the want of time to try the cause at the second subsequent term, so that the trial be had without unnecessary delay. But the revision of 1845

(p. 882), section 25, *supra*, 4223, Revised Statutes 1889, was amended by adding after the words "unless the delay happen on his application," the following to wit, "or be occasioned by want of time to try such cause at such third term." There is no question but that the object of the legislature was to protect the personal liberty of the citizen against oppressive and unnecessary delays, and to that end it fixed a limit to the number of continuances by the State at three, after which the defendant was to be discharged so far as relates to the offense for which he is under indictment, unless the delay is occasioned by some act of the defendant, or for want of time by the court to try the case. If then the purpose of the legislature was not to discharge the defendant from the offense, it is somewhat strange that the law so provides, and that when amending the same section of the statute in 1845, they did not amend it in that respect also.

Conceding, for the sake of the argument only, that the facts disclosed by the record did not justify Judge Mauldin in making the order discharging defendant; and that it was the arbitrary exercise of judicial power, as to which the law affords the State no redress, to the end that defendant should go acquit of the crime charged against him, it is sufficient that the order when made, operated as an acquittal of defendant, and that he could not thereafter be indicted and put upon trial for the same offense.

It is asserted that the judgment is void in that it is not shown by the record that the defendant was not brought to trial without his fault before the end of the third term of the court in which the cause was pending held after the indictment, and therefore void and subject to collateral attack. Upon the other hand my

Vol. 145 mo—13

contention is that the judgment of discharge is at most irregular, or erroneous and not subject to collateral attack.

In *Murray v. Purdy*, 66 Mo. 611, there is quoted with approval the following from Tidd's Practice, 512: "An irregularity may be defined to be the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unreasonable time or improper manner. A judgment by default is irregular when the defendant, in an action not bailable, has not been served with a copy of process, or there has been no declaration regularly delivered or filed, and notice thereof given to defendant; or when it was required before defendant's appearance, or without entering a rule to plead, or demanding a plea when necessary before the time for pleading has expired, or after a plea has been regularly delivered or filed." In that case it was held that an order of a county or probate court approving a sale of real estate by an administrator, when made at a term different from that prescribed by law, is not void, but voidable only. So in *Doan v. Holly*, 27 Mo. 256, it was ruled that when a judgment is rendered contrary to the provisions of a statute, or the rules of court, it is simply an irregular or erroneous judgment and nothing more.

In *Branstetter v. Rives et al.*, 34 Mo. 313, it was ruled that a judgment taken by default against defendant before the time allowed by law to answer had expired, was irregular. In *Sims v. Gray*, 66 Mo. 616, it was ruled that a judgment prematurely rendered was not void. The court said: "A judgment rendered after notice, but sooner than it should have been rendered, according to the rules of law, or the practice of

the court, is simply an irregular judgment." The same rule was announced in *Brackett v. Brackett*, 61 Mo. 221; *Leonard v. Sparks*, 117 Mo. 103; *Clark v. Evans*, 64 Mo. 258; *Showles v. Freeman*, 81 Mo. 540; and in *Nave v. Todd*, 83 Mo. 601.

Conceding then that the record does not show affirmatively, that three terms of the court had expired after the indictment was found before defendant's discharge, and that the order and judgment discharging him was prematurely entered, it was simply entered out of time, not in regular order; was what the court would have had the unquestionable right to have done under different circumstances, and irregular. There is no difference in principle between a judgment rendered before the time has expired in which a defendant is given by statute to plead, and the rendition of the judgment in this case discharging defendant, even if it be true that the judgment was rendered before the time had elapsed which entitled him to such discharge.

Nor can the sufficiency of the plea in bar be inquired into collaterally. But even if it could be, there is no question as to its sufficiency under section 4223, *supra.*

It is said, that the judgment is not only void, but that in order to entitle the defendant to be discharged it devolved upon him to show that the case had been continued at three different terms of the court after the indictment was found, without his fault or for want of time to try the same. Where a person under indictment seeks to be discharged under the statute, either in the court where the indictment is pending, or by *habeas corpus* upon the ground that he has not been brought to trial in accordance with its provisions, then I concede that to entitle him to such relief he must bring himself clearly within its provisions, and it must be

made to appear that he was not brought to trial because of the laches of the State, and that is all that the cases of *State v. Huting*, 21 Mo. 464; *State of Missouri v. Cox*, 65 Mo. 29; *Byrd v. The State*, 1 Howard (Miss.) 163; *State v. Spergen*, 1 McCord, 563; *Ex parte Joseph Santee*, 2 Va. Cas. 363; *Vance v. Commonwealth*, 2 Va. Cas. 162; *People v. Camilo*, 69 Cal. 540; *State v. Marshall*, 115 Mo. 383; *Gallagher v. The People*, 88 Ill. 335; *Patterson v. State*, 49 N. J. L. 326, and *Ex parte Donaldson*, 44 Mo. 149, decide.

In *Hernandez v. The State*, 4 Texas Court of Appeals 425, the defendant who was under indictment for murder, sued out a writ of *habeas corpus* for his discharge on the ground that he had not been granted a "speedy public trial, by an impartial jury" under the Bill of Rights, article I, section 10, of the Constitution of that State, but there was no showing that the defendant had ever demanded, or been refused a trial, and it was held that he was not entitled to be discharged.

But no such questions as were involved in the foregoing cases and with which we have to deal, are presented by this record. In the case in hand defendant in support of his plea in bar to this prosecution, presented the record of a court of general jurisdiction, having jurisdiction of both the subject-matter and of the defendant, showing his acquittance and discharge from the offense charged against him in the indictment. Every presumption must be indulged in favor of the validity of that judgment, and this includes the presumption that the order of continuance made at the January term, 1895, of the Dunklin circuit court, was set aside before the order and judgment of discharge was entered.

The case was on the docket at the January term, 1893, of the Dunklin circuit court, and nothing appear-

ing to the contrary the presumption will be indulged in favor of the judgment, that the case was continued on the application of the State.   At the January term, 1893, of that court, it was continued generally by agreement of the parties.   At the July term, 1893, following, nothing appearing to the contrary, the presumption must be indulged that it was continued by the State.   A like presumption must be indulged with respect to the disposition of the case at the January term, 1894.   The fact that the prosecuting attorney moved the court to permit him to enter a *nolle prosequi* at the time last named and that the court would not permit him to do so; that he then demanded a forfeiture of the defendant's recognizance and its refusal, and that he then *withdrew his notice to re-instate* the case on the docket, does not by any means show, except by implication, that the case was not on the docket at that term, and no presumption can be indulged that it was not.   If the case was not on the docket, it is somewhat difficult to see how the State could have taken a *nollé* or forfeited defendant's recognizance.

Again at the July term, 1894, nothing appearing to the contrary, the same presumption must be indulged. At the January term, 1895, the record showed that the case was continued by the State.   It thus appears that the case was presumably continued at least three times by the State before the term at which the judgment was rendered, and the record showed affirmatively that it was continued on application of the State at that term, making in all four continuances by the State after indictment found, while only three were necessary in order to entitle defendant to his discharge.

But even if the facts disclosed by the record do not show that defendant was entitled to be discharged at the time of the entry of the judgment and order of dis-

charge, such facts, not being jurisdictional, can not be inquired into upon this appeal. Moreover, it was not incumbent upon the defendant to demand a trial at any term of court, or at any time, in order to entitle him to be discharged. The statute imposes no such duty, but expressly provides that if the party under indictment be not brought to trial before the end of the third term after the indictment is found, he shall be entitled to be discharged, so far as relates to such offense, etc.

It is true that there are some cases based upon statutes which require that before a discharge of a defendant occurs he should demand a trial in order to his discharge, but there are two answers to the assertion that such a demand should have been made in the case at bar. *First,* the statute does not require such a demand to be made. And, *second,* if necessary, it will be presumed that such a demand was made, because superior courts proceeding according to the course of the common law are presumed to proceed by right and not by wrong. *Blair v. Railroad,* 89 Mo. *loc. cit.* 395; *Huxley v. Harrold,* 62 Mo. 516. The judgment of such courts are not to be overthrown collaterally nor impeached by implication.

In *State v. Nugent,* 71 Mo. *loc. cit.* 147, it was ruled that in the absence of anything in the record to the contrary it would be presumed that the continuances granted the State were for good and sufficient reasons. If such presumptions may be indulged in behalf of the State the record being silent, it would follow it would seem that a like presumption should be indulged on the part of a defendant in favor of life or liberty and to uphold a judgment granting him his final discharge.

Much stress seems to be laid upon the fact that the record of the Dunklin circuit court showed that

the case was continued, and did not show that the continuance was set aside before judgment discharging defendant was rendered, and that in consequence thereof the court had lost jurisdiction of the case, and having no authority to render the judgment it was void. *Ex parte Donaldson, supra*, is relied upon in support of this contention. That case was a proceeding by *habeas corpus* by Donaldson who was then under arrest on a warrant charging him with murder, for his discharge upon the ground that he had theretofore been indicted for the same offense, and that he filed his motion in that case to be discharged because he had not been brought to trial within three terms after the indictment was found, but before the motion was disposed of the State entered a *nolle prosequi;* that the motion was filed at a term after the cause had been continued for that term. There was no evidence that the continuance was set aside, and the court said that "without that being done, the court had no power to act on the motion." But in the same case it was expressly held that every inference was to be made in support of the court's rulings, and that as "the prisoner never had *any judgment of* discharge entered in his favor, he was never put in jeopardy." This case is more in favor of our contention than against it. The burden was upon Donaldson to show that he was entitled to be discharged, and the fact that the court said that the court in which the indictment had been pending had no power to act on the motion for his discharge until the continuance was set aside, from no standpoint means that a judgment of discharge rendered under the circumstances would have been void. Beside, in the case at bar defendant had a judgment of discharge in his favor, which shifted to the State the burden of showing that it was void.

It is conceded on all hands that these sections of our statute now under discussion were passed to inforce

and effectuate that section of our Bill of Rights which ordains that "in criminal prosecutions the accused shall have the right to a speedy, public trial by an impartial jury of the county." Art. II, sec. 22, Const. of Missouri; *Stewart v. State*, 13 Ark. 720; *McGuire v. Wallace*, 109 Ind. 287; *Ex parte Donaldson*, 44 Mo. 149. Bishop says, "Every arrested person has a natural right secured by our constitution to a speedy trial." Sec. 951.

In the *Donaldson* case it was decided that the statute did not apply to the criminal court of the city of St. Louis. Subsequently, however, the statute in question was so amended that even cases in the criminal courts were embraced within the scope of the statute which in given circumstances puts an end to criminal prosecutions. R. S. 1889, sec. 4225. This section exhibits quite plainly the legislative desire and solicitude that the provision of the Bill of Rights should not fail of being enforced in all cases for the want of legislative aid, and it is proper to state that in that case Judge WAGNER lays stress on the fact that "the prisoner *never had any judgment of discharge laid in his favor.*" No case can be found in the books where a person discharged because of the failure of the State to bring him to trial within a given time has ever been put on his trial for the offense from which he was discharged. And it can not be doubted that the legislature has the power to enact law in aid of, and to enforce, constitutional provisions and prohibitions, otherwise many of such provisions would be, and remain, dead letters. Unless prohibited by the Federal or the State Constitutions the legislature of this State has the same unfettered powers as belong to the British. Parliament. Cooley's Const. Lim. [6 Ed.] 105–205.

That the legislature has the power to pass statutes of limitations which bar either civil or criminal prosecutions no one has ever doubted. At the end of the

designated period, whether the prosecution be civil or criminal, the bar of the statute attaches and that bar is a perpetual bar.

But no one ever thought of designating such action on the part of the legislature as the exercise of the *"pardoning power."* If the legislature has the power of passing general statutes which prevent civil suits from being brought or criminal prosecutions from being begun after the lapse of a certain period, then for the same reason it has the power to declare that after a criminal prosecution has been begun it shall cease at the end of designated time. A prosecuting attorney has the right to enter a *nolle prosequi* either as to the whole or part of an offense. *State v. Frazier*, 137 Mo. 317. And yet no one has ever contended that the entering of such *nolle* was the exercise of the pardoning power.

By the continuance the court had not lost jurisdiction of the case. It was said in *State. v. Watson* 95 Mo. 411: "There is no final disposition of the cause until there is a final judgment. This is true in respect of criminal cases." 1 Elliott's Gen. Prac., sec. 265; *State v. Schierhoff*, 103 Mo. 47.

"It seems to us, a proceeding is not void where there is jurisdiction of the general class of cases, and nothing more than a wrongful exercise of authority in a particular case either because of a mistake of fact or of law, for the court having authority over the general class of cases must, as a general rule, have jurisdiction. to determine whether or not that authority has been lost or exhausted." 1 Elliott's Gen. Prac., secs. 265, 230, 233, 240, 241, 257, 258, 264. In 1 Elliott's General Practice, section 261, it is said: "Silence of the record as to jurisdictional facts does not authorize an inference or intendment against the proceedings.

. . . If the court is one of general jurisdiction its exercise of power is presumed to be rightful and its decisions secure against collateral assaults, no matter what is the nature of the authority exercised in a particular case belonging to a class of which it has general jurisdiction." "It is a rule, universal in its acceptation, that when a court once acquires jurisdiction of a subject-matter, any subsequent error or irregularity will not divest it." *Hardin v. Lee*, 51 Mo. 241. Every intendment will be presumed in favor of the action of the Dunklin court, and if necessary to sustain the judgment it will be presumed that the order of continuance was set aside before the judgment was rendered. *Blair v. Railroad*, 89 Mo. 383; *Pim v. The City of St. Louis*, 122 Mo. 654. But whether the continuance was set aside or not before the rendition of the judgment the court had not lost jurisdiction of either the defendant or of the subject-matter, and the most that can be said is that the judgment was prematurely rendered, out of time, and was merely irregular, and not void.

In *Cloud v. Inhabitants of Pierce City*, 86 Mo. 357, the judgment recited that the defendant had been duly served with process, but the process showed that no legal service had been had, and it was held that the judgment was void because of the want of jurisdiction over the defendant. The same rule was announced in *Milner v. Shipley*, 94 Mo. 106; *Crow v. Meyersieck*, 88 Mo. 411, and *Bell v. Brinkmann*, 123 Mo. 270. The question involved in those cases was jurisdictional, while in the case at bar, it is conceded that the Dunklin circuit court had jurisdiction of both the defendant and the subject-matter.

In *Lingo v. Burford*, 112 Mo. 149, GANTT, J., in speaking for the court said: "The county court had original exclusive jurisdiction to hear and determine

State v. Wear.

upon a proper petition and due notice, whether a new public road should be established over the route designated in the petition. The petition stated every fact necessary to give the court jurisdiction of the subject-matter. Twenty days' notice of this application was required. The statute required 'proof of notice having been given as required.' The county court was the tribunal authorized to hear and determine the sufficiency of the proof. It was not required by law to spread on its record the evidence by which it ascertained that notice had been given. It did find and spread on its record that 'notice had been given according to law.' This was a fact *in pais* to be established by evidence, and its power to proceed further in the case depended upon the giving or failure to give this notice. It judicially ascertained it was given, and we think that it is conclusive as against a collateral attack."

In *Daugherty v. Brown*, 91 Mo. 26, a case in all respects similar to this, this court held a recital that, "Due legal notice had been given of the intended application," was sufficient, and affirmed the judgment of the circuit court refusing to enjoin the overseer from opening the road. The decision in that case is well sustained by authority elsewhere. *Hendrick v. Whittemore*, 105 Mass. 23; *Borden v. State*, 11 Ark. 519; *Delaney v. Gault*, 30 Pa. St. 63. Again in *Lovitt v. Russell*, 138 Mo. 174, GANTT, J., observed, "The judgment of a court of competent jurisdiction, so long as it stands unreversed, can not be be impeached in a collateral proceeding."

The rule as shown by the authorties cited is that a court of general jurisdiction is presumed to have jurisdiction when it proceeds to exercise it. And when it has acquired jurisdiction (as in this case must be conceded), any subsequent error or irregularity will not

oust the jurisdiction thus acquired, nor subject a judgment obtained in the exercise of such jurisdiction to collateral attack.

A different rule altogether prevails, however, where a court of general jurisdiction assumes to have, and apparently has, jurisdiction, while in reality it has none at all. In such case it is always permissible to collaterally attack a judgment by showing by other parts of the record than the judgment itself, that no jurisdiction was acquired, and that consequently the judgment was void. This was *Cloud's* case *supra*. But all the cases show that collateral attack is never successful where the court has clearly acquired jurisdiction in the first instance.

Since writing the above opinion this cause has again been re-argued.

The point now made in this contention and for the first time is this: That inasmuch as the record states that the prosecuting attorney offered to enter a *nolle prosequi* which the trial court refused to permit, that such offer and such refusal ousted the jurisdiction of the court, and consequently rendered all of its subsequent acts nullities and of no effect.

This contention is without merit, as I shall endeavor to show, and will therefore consider it from the various points of view in which the question presents itself to my mind.

In the first place the fact of offering to enter a *nolle prosequi* and its denial by the court has not been preserved, because the refusal of permission to enter it was a mere matter of exception, and even had an exception been taken at the time to the refusal of the court respecting the *nolle*, such exception could only have been saved by a bill of exceptions, as it is well settled in this State and elsewhere, that a bill of exceptions is the only repository known to the law in

which can be preserved matters of exception, and that the bare recital in the record by the clerk of matters of pure exception has no preservative power. *Nichols v. Stevens*, 123 Mo. *loc. cit.* 119, and cases cited, *Ryan v. Growney*, 125 Mo. *loc. cit.* 480; *State v. Taylor*, 134 Mo. *loc. cit.* 137; *State v. Prather*, 136 Mo. *loc. cit.* 25; *Critchfield v. Linville*, 140 Mo. *loc. cit.* 192. The point therefore concerning the refusal to permit the *nolle* is not before this court for consideration.

But in the second place, even if it were; even if it had been preserved in the formal and legal manner as heretofore indicated, the result to be announced would still be precisely the same, and for the following reasons:

*First*, it can not de disputed that, granting that the court erred in the particular stated, and that exceptions thereto were properly saved, still it is beyond dispute that the cause *remained pending in the court*, and if it did, jurisdiction also remained in that court to dispose of it. The pendency of a cause in a court where jurisdiction exists, and has been acquired in a lawful manner is a test of the continuance of such jurisdiction, and of its valid exercise until final disposition is made of the cause, no matter how flagrant may be the errors which attend the exercise of such jurisdiction, nor how numerous and obvious may be the errors with which the record abounds, because the jurisdiction to decide right, being once conceded, such concession necessarily embraces the power to decide wrong, and a wrong decision though voidable, and though it may be avoided, yet until avoided is equally as binding as a right one; it can not be attacked collaterally; the only way its binding force can be escaped or avoided is by appeal or writ of error. Outside of these two methods it is impregnable to all assaults.

This doctrine is as ancient as the law itself and

abounds in every treatise where judgments and juris-
diction of courts are mentioned or commented on. No
lawyer has ever doubted or questioned it for a moment.
Why should it be doubted, or questioned now, and for
the first time?

A very strong illustration of the application of this
doctrine is furnished by a case decided by this court
many years ago.    It was where one Jackson was im-
prisoned by virtue of an indictment found in the crim-
inal court of St. Louis county, and not having been
brought to trial at the end of the second term after the
indictment was found, he was discharged on *habeas
corpus* by a judge of the circuit court of St. Louis
county from his imprisonment.    Martin, the jailor,
having him in custody, was ordered by the criminal
court to retain Jackson in custody to answer the in-
dictment, but disregarded the order of the criminal
court and discharged Jackson in obedience to the order
of the circuit judge.    Martin was fined for contempt in
disobeying the order of the criminal court, and ap-
pealed to this court from the judgment imposing the
fine.    In the disposition of the case it became neces-
sary to consider the action of the circuit judge in dis-
charging Martin, and Judge Ryland speaking for the
court observed: "The St. Louis circuit court, and the
judge thereof in vacation, had the power to grant and
issue the writ.    This gives to such court or judge jur-
isdiction over the subject-matter; and though the stat-
ute expressly declares that 'no person imprisoned on an
indictment found in any court of competent jurisdiction,
or by virtue of any process or commitment to enforce
such indictment, can be discharged under the provis-
ions of this act, but may be let to bail if the offense be
bailable, and if the offense be not bailable he shall be re-
manded forthwith,' yet this section does not take away
the jurisdiction, but orders and directs what shall be

done. A circuit judge, therefore, discharging, against this provision of the statute, may be considered as acting indiscreetly, even erroneously. Yet having jurisdiction over the subject, his order discharging must be considered a justification to the jailor in turning out the prisoner. . . . . . . . The circuit judge having authority to issue the writ of *habeas corpus* (and this point the attorney for the State in his brief admits, but contends that all the subsequent acts of the judge are not only against but beyond his jurisdiction and are utterly void), his act afterward in discharging Jackson, the prisoner, although it may have been erroneous and contrary to law, yet it could not be said to be an act *coram non judice.* There is a broad and obvious distinction between the illegal judgment of a court having jurisdiction, between the illegal judgment of a court having jurisdiction, and the act of a court without jurisdiction." *Martin v. State,* 12 Mo. 475.

The case just cited parallels the case at bar and fully affirms the validity of the action taken by the circuit court of Dunklin county in making the order discharging Wear, even if it be admitted that such order was erroneous and illegal, something which this record does not show, nor even tend to show. *Martin's* case was allowed and fully approved in *Ex parte Jilz,* 64 Mo. 205, where other authorities to the like effect are to be found, in particular *Yates'* case, 6 Johnson, 337.

In the third place, granting that the prosecuting attorney properly asked and was improperly refused leave to enter a *nolle,* and that exception was properly preserved, still that officer waived his right to enter a *nolle* by subsequently applying for a continuance. If entitled to the former, then certainly not to the latter. He could not have both. He could not take such inconsistent positions in the lower court nor in this court. By asking for a continuance he thereby recog-

nized and acknowledged the continued pendency of the cause in the trial court, and hence can not change his position, and assert that all jurisdiction of the lower court was ousted and lost by reason of his unsuccessful attempt to enter a *nolle*. He is estopped from taking in this court any such inconsistent and contradictory positions. *Brown v. Bowen*, 90 Mo. 184; *McClanahan v. West*, 100 Mo. 309; *Smiley v. Cockrell*, 92 Mo. 105; *Bensieck v. Cook*, 110 Mo. 173.

Suppose, by way of illustration, that after the refusal of the court to permit a *nolle* to be entered defendant had been put upon his trial, and found guilty of a capital offense, would the State then sanction a plea in bar made by him, that the court had no power to try him because it had lost all jurisdiction to do so by reason of its refusal to permit a *nolle* to be entered? And yet if the State's position be correct that loss of jurisdiction followed the refusal to allow a *nolle* to be entered, it must be equally true that such loss of jurisdiction must have occurred in the case supposed.

No substantial difference can be urged between the real and the supposed case.

From these considerations it follows that the judgment should be reversed and the defendant discharged, and it is so ordered.

BRACE, WILLIAMS and MARSHALL, JJ., concur; GANTT, C. J., and ROBINSON, J., dissent; SHERWOOD, J., not sitting.

GANTT, C. J. (*dissenting*).—From a conviction of murder in the second degree the defendant has appealed to this court.

The defendant shot and killed Charles E. Lael on the night of April 9, 1892, in the city of Poplar Bluff in Butler county, Missouri. At the May term, 1892, of the circuit court of Butler county, the grand

jury returned into open court an indictment charging defendant with murder in the first degree, of said Charles E. Lael. The defendant is the son of Hon. John G. Wear, who was the judge of the circuit court of Butler county, at the time of the homicide, and ever since has been and is now, the judge of said circuit.

During the November term, 1892, Judge Wear being disqualified by his relationship to the defendant, it was necessary to provide for a judge to hold said court and thereupon R. F. Scott, Esq., the prosecuting attorney, and the defendant, entered into a written agreement that H. N. Phillips, a member of the bar, should act as special judge to try said cause as provided by section 4177, Revised Statutes 1889. Mr. Phillips appeared, took the oath of office as special judge, and made several orders, but afterward refused to act further and thereupon the prosecuting attorney, Mr. Scott, and defendant entered into a new agreement, selecting T. H. Mauldin, a member of the bar, as special judge.

Mr. Mauldin heard an application for change of venue filed by the defendant and granted a change to Dunklin county, and admitted the defendant to bail in the sum of $10,000. At the January term, 1893, the cause was docketed in the Dunklin court, but the record is silent as to any disposition made of this cause at said term. At the July term, 1893, of the Dunklin circuit court, the following entry of record appears:

"State of Missouri  
      v.    } 646.  
"Chas. Wear,

"This cause coming on to be heard and the judge of this court Hon. John G. Wear being related to the defendant and incompetent to sit in the cause as judge, he vacated the bench, and Hon. T. H. Mauldin, having

been heretofore elected special judge to try the cause, assumes the bench, and come the attorneys for the State and the defendant in person as well as by his attorneys, and *by agreement of the parties this cause is continued generally.*"

At the January term, 1894, the following entry appears of record in said court:

"State of Missouri ⎫
     vs.     ⎬ 646.
"Chas. Wear, ⎭

"This cause being called and Judge Wear, being disqualified to sit in the same by reason of his being related to the defendant, vacates the bench, and Hon. T. H. Mauldin, heretofore elected as special judge to try the cause, assumes the bench, and now comes the attorney for the State and files his motion asking that the cause be *nolle prosequied*, and the court after hearing the argument of counsel for both plaintiff and defendant, and after duly considering the premises doth overrule said motion, to which ruling the attorney for the State at the time excepts; and also comes the attorney for the State and files his motion asking a forfeiture of recognizance herein. The defendant is called upon his recognizance, and now the attorney for the State, having moved the court to reinstate this cause upon the docket, does by leave of the court withdraw said motion to reinstate, and the motion to take forfeiture upon defendant's recognizance is taken up, and the court after hearing argument of counsel for plaintiff and defendant and after due consideration of the premises herein, doth order that the same be and it is overruled, to which ruling the attorney for the State at the time excepted." At the July term, 1894, no order was made in this cause, as appears by the records of said court.

At the January term, 1895, the following entry appears of record:

"State of Missouri,
        vs.
"Charles Wear.

"Indictment for murder in the first degree.

"This cause coming on to be heard and Judge Wear, being disqualified to sit as judge herein vacates the bench, and Hon. T. H. Mauldin, special judge in this cause, assumes the bench. And now comes the prosecuting attorney for the State, and this cause is continued at instance of the State at its cost."

"Comes now the defendant in his own proper person and by his attorneys and files in this court his motion to be discharged from the indictment and the charge therein contained, which motion is as follows, to wit:

" 'The State of Missouri
        against
"Charles Wear.

" 'In the circuit court, January term, 1895. Indictment for murder.

#### " 'MOTION TO DISCHARGE DEFENDANT.

" 'The defendant comes in his own proper person as well as by attorney and moves the court to discharge him from said indictment for murder in the first degree for the killing of Charles E. Lael, for which he was indicted on the fifth day of May, 1892, and the offense therein charged, for the following reasons: Because said defendant has not been brought to trial before the third term of the said circuit court of Dunklin county, in which said cause is pending, after the removal of said cause by change of venue to said Dunklin county circuit court from the circuit court of Butler county, this State.

" 'And this defendant states that the delay in bringing said cause to trial did not happen on his application but on the application of the State. He further states that the delay in bringing defendant to trial has not been occasioned by the want of time to try said cause at said third term of this court nor for want of time to try said cause at any prior term thereof.'

"Said motion being taken up by the court for adjudication and decision, and the State of Missouri appearing by W. E. Renfroe, prosecuting attorney of Butler county, Missouri, and the defendant in his own proper person and by his attorneys, and all and singular the matters and things stated in said motion being submitted to the court, the court doth find the statements therein contained to be true, that is to say, that said defendant Charles E. Wear has not been brought to trial before the end of the third term of said court of Dunklin county, in which said cause is pending after the indictment in this cause was preferred and after the removal of said cause from the circuit court of Butler county to this court, and the court doth further find that the delay in bringing said defendant to trial did not happen on defendant's application, but at the instance and on the application of the State, and that said delay was not occasioned by the want of time on the part of this court to try said cause at the third term or any prior term of said court.

"Now, therefore, the premises considered, it is ordered, adjudged and decreed by the court, that the defendant be and he is hereby released and discharged from said indictment and from the offense therein charged, and that he go hence thereof without day."

At the November term, 1894, of the Butler circuit court a new indictment for murder in the first degree was preferred by the grand jury of Butler county, and was filed February 25, 1895, during the same term.

On April 8, 1895, Judge Wear entered his order of record requesting Judge Henry Riley of the twenty-eighth circuit to hold the Butler court in such cases as Judge Wear was disqualified, and adjourned the court to May 4, 1895, for that purpose.

The regularity of the call of Judge Riley and his right to hold said court was affirmed by this court, In Banc, in *State ex rel. v. Wear*, 129 Mo. 619.

Judge Riley caused process to issue and the defendant Charles Wear was apprehended. On January 26, 1896, the circuit court of Butler county, being regularly convened and defendant in custody, he filed his plea to the jurisdiction of Judge Riley which was overruled. The defendant then waived formal arraignment and pleaded not guilty. He then applied for a change of venue from Judge Riley which was denied.

On January 21, the defendant filed his plea in bar, that he had been discharged from said offense by Special Judge Mauldin, as above set out, which plea was overruled by the court. A continuance was granted defendant until February 17, 1896, at which time defendant asked to have the cause certified to Special Judge Mauldin, and this was denied. Thereupon the court ordered the cause to proceed. An affidavit was filed against the sheriff by the prosecuting attorney, and the court sustained the application, and the coroner of the county was appointed elisor to summon a jury, who appointed his deputy. A motion to quash the panel was overruled. The jury heard the evidence and instructions of the court, and returned a verdict of guilty of murder in the second degree, and assessed his punishment at thirty-five years in the penitentiary. After motions for new trial and in arrest the defendant was duly sentenced.

From that sentence he appeals to this court.

Unable to concur in the very able opinion of my

brethren, I respectfully submit my reasons for not so doing.

I.    The all-important question which has arisen upon this record is, not so much what error may have occurred in the trial of defendant before Judge Riley, but whether the circuit court erred in asserting the right to try him at all. It is at once apparent that our decision must be fraught with grave consequences whatever it may be. If it be held that the circuit court had no power to try defendant then there is room for the assertion that an offense of the gravest character has not only not been punished, but the offender has never even been put in jeopardy therefor. On the other hand, we are admonished to proceed with the greatest care lest we break down one of the inestimable safeguards of human liberty. From either point of view, it demands most thoughtful consideration. The right of all persons, arrested upon a criminal accusation, to "a speedy public trial," is declared in the constitutions and bills of rights in all, or nearly all, of the States of our Union, and in the Sixth Amendment of the Constitution of the United States it is declared that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed," etc. The character of the plea in bar to the present prosecution is of the first importance. Scanning it closely it will be seen that it is neither a plea of *autre fois acquit*, or *convict*, nor is it a plea of former jeopardy, but is a plea of *a statutory discharge* by the circuit court of Dunklin county for *laches* in the prosecution of another case for this same crime under a former indictment. The issue tendered in this court is the sufficiency of the plea and the record evidence offered by defendant in support thereof, rather than the effect of a judgment in a collateral proceeding. The burden

was upon defendant to establish by the record of the Dunklin court his *statutory exemption* and *immunity* from a trial for the offense charged in the indictment, and it is that plea and the record evidence offered on that isssue that we have to first consider. Based upon a statute, it must stand or fall accordingly as it meets the requirements of that statute. It is essential then to determine, *first*, whether defendant pleads facts which authorized the Dunklin county circuit court to discharge him; *second*, the legal effect of such a discharge if without the authority of law. The plea is somewhat novel in its nature.

As already said it does not rest upon that universal law of reason and justice embodied in our national and state constitutions that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," but is founded upon that other declaration, in our bill of rights that "in criminal prosecutions the accused shall have the right of a speedy public trial by an impartial jury of the county." Many expositions of this constitutional guaranty can be found in the official reports of the different states of the Union. In *Nixon v. The State*, 2 Sm. & M. (Miss.) 507; s. c., 41 Am. Dec. 601, it was said: "Delays growing out of the established mode of proceeding, which has been so established by law equally for the protection of the accused and to accomplish the design of the scheme of laws, are evils necessarily attendant upon all human systems of jurisprudence. They are evils to which all may be subjected alike and which constitute a part of the price paid for the advantages, far greater in proportion, thereby derived. By a speedy trial is then intended, a trial conducted according to fixed rules, regulations and proceedings of law, free from vexations, capricious and oppressive delays, manufactured by the ministers of justice." And it is perhaps as well expressed

in *Ex parte Stanley*, 4 Nev. 116, as anywhere. The court in that case says: "But what is to be understood by a *speedy trial*, is the embarrassing question now to be determined. It is very clear that one arrested and accused of crime has not the right to demand a trial immediately upon the accusation or arrest being made. He must wait until a regular term of the court having jurisdiction of the offense with which he is charged, until an indictment is found and presented, and until the prosecution has a reasonable time to prepare for the trial. Nor does a *speedy trial* mean a trial immediately upon the presentation of the indictment or of the arrest upon it. It simply means that the trial shall take place as soon as possible after the indictment is found, without depriving the prosecution of a reasonable time for preparation. The law is the embodiment of reason and good sense; hence, whilst it secures to every person accused of crime the right to have such charge speedily determined by a competent jury, it does not exact impossibilities, extraordinary efforts, diligence, or exertion from the courts, or the representatives of the State; nor does it contemplate that the right of a speedy trial which it guarantees to the prisoner shall operate to deprive the State of a reasonable opportunity of fairly prosecuting criminals."

The statute of Missouri, under which defendant claims exemption from punishment for the offense of which he was convicted is known as section 4223, Revised Statutes 1889, and is in these words: "If any person indicted for any offense and *held to answer on bail*, shall not be brought to trial before the end of the third term of the court in which the cause is pending which shall be held after such indictment found, he shall be entitled to be discharged so far as relates to such offense, unless the delay happened on his applica-

tion, or be occasioned by the want of time to try such cause at such third term."

This section and sections 4222 and 4224 were in the same language in the revision of 1879, section 1923, and General Statutes 1865, section 28, chapter 213, page 851, and Revised Statutes 1855, section 29, page 1194, Revised Statutes 1845, section 26, chapter 139, page 882. The words "or be occasioned by the want of time to try such cause at such third term" were inserted by an amendment February 13, 1839, to the twenty-fourth section of the sixth article of *"An Act to regulate criminal proceedings"* approved *March 21, 1835.* (R. S. 1835, *sections 24 and 25, page 491.*) Laws of Missouri 1838 and 39, page 98.

These provisions of our statute had their origin in the Habeas Corpus Act, and are to be found prior to 1835 in Laws of Missouri 1825, 1st volume, page 424, section 11, and Missouri Territorial Laws 1804–24, chapter 127, section 4, page 353. In the said Habeas Corpus Act the language is *"the prisoner shall be set at liberty by the court"* instead of *"discharged so far as relates to such offense."*

In *State v. Huting*, 21 Mo. 464, this court construed the twenty-fifth section of the sixth article of the act concerning practice and proceedings in criminal cases, Revised Statutes 1845, the said section being identical with section 4222, Revised Statutes 1889, and the same as section 4223, Revised Statutes 1889, save that when the prisoner is on bail the third term must elapse before he is entitled to his discharge. It was then held that in considering whether a prisoner is entitled to a discharge under the section above referred to, "a term which lapses, or which is adjourned in the midst of a trial by reason of the illness of a judge, is not to be counted; nor is a term, at which there was a trial and a failure of the jury to agree, to be counted, the Consti-

tution authorizing a continuance in such a case; nor is a term which by law is limited to six days to be counted, where on the fourth day the case was continued because up to that time only five jurors had been impaneled; nor are special terms to be counted. The statute was only intended to operate *when there is some laches on the part of the State.*"

Again in *State v. Cox*, 65 Mo. 29, this court held that where a change of venue is taken by a defendant in a criminal case, he was not entitled to a discharge as for want of prosecution, under sections 27, 28, and 29, Wagner's Statutes 1872, page 1105, if tried at the second term of the court in the county to which the change was awarded *after* the *filing of the transcript in such county*.

Likewise it has been ruled upon a similar statute by the supreme court of Mississippi that the prisoner is not entitled to his discharge merely because the time designated for holding the two terms of court had elapsed, but it must appear that *two terms at which courts were actually holden* had elapsed. *Byrd v. State*, 1 How. (Miss.) 163. The same interpretation was given to a statute similar in all substantial respects in South Carolina. *State v. Spergen*, 1 McCord, 563. So also in Virginia. *Ex parte Santee*, 2 Va. Cas. 363; *Vance v. Com.*, 2 Va. Cases, 162; *People v. Camilo*, 69 Cal. 540.

The statute law of Ohio is the same as our own on this subject. In *Ex parte McGehan*, 22 Ohio St. 442, a party under indictment and on bail sought a discharge by virtue of section 161 of the code of criminal procedure of that State, which is identical with our section 4222, Revised Statutes 1889. But said the Supreme Court of Ohio through its chief justice: "There are two good reasons in our judgment why this application should be refused. The first of these is that McGehan did not make any application for his discharge, or ask for a

trial at the November term, 1871, of the Preble court, which is claimed to be the second term intervening after the finding of the indictment within the meaning of section 161 of the code. That section provides, that if the prisoner is not 'brought to trial' before the end of the second term of the court held after the indictment is found, 'he shall be entitled to be discharged, so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner.' *This section standing alone* would seem to give the prisoner the right to be discharged at any time after the end of the second term *without any action* on his part during that term and simply for the non-action on the part of the State in failing to bring him to trial. *But this section must be construed in connection with section 163.* That section provides that 'when an application is made' by the prisoner for his discharge under section 161 (or under section 162) if the court 'shall be satisfied there is material evidence on the part of the State which can not be had; that reasonable exertions have been made to procure the same, and that there is a just ground to believe that such evidence can be had at the succeeding term, the cause may be continued and the prisoner remanded or admitted to bail as the case may require.' In the light of both these sections it is quite evident that an 'application' by defendant during the term, at the end of which he is entitled to his discharge, *is contemplated.* It is only 'when application is made for discharge' that the State has a right to continue for the causes specified in section 163. *Non constat,* but that if the application had been made at the November term, 1871, the State could and would have shown cause for continuance. For aught that appears the very reason why application was not made at that time, was that the State should show good cause for continu-

ance.   No application was made till the February term, 1872, and then the State was relieved from the necessity of showing cause for continuance, for the reason that the prisoner had the cause continued on his own motion.   *From the record we are bound to presume that the cause was continued at the November term by consent of parties or at least without objection, and there is nothing to show that the prisoner, in any form, made known to the court that he insisted on being either discharged or tried at that term which we think should appear in order to entitle him to a discharge under the statute.*"

Now section 4224, Revised Statutes of Missouri 1889, is exactly like section 163 of the criminal code of Ohio quoted by the supreme court in its decision.   It is in these words:   "If, when application is made for discharge of a defendant under either of the last two sections (to wit, secs. 4222 and 4223) the court shall be satisfied there is material evidence on the part of the State which can not then be had, that reasonable exertions have been made to procure the same and that there is just ground to believe that such evidence can be had at the succeeding term, *the cause may be continued to the next term,* and the prisoner remanded or admitted to bail, as the case may require.   If the defendant shall not be tried before the end of the term last mentioned, the State shall not be entitled to any further continuance of the case and the prisoner shall, *if he require it, be discharged.*"

In *Hernandez v. The State,* 4 Texas Court of Appeals, 425, under a constitutional provision like ours, it was ruled that a prisoner who has never demanded or been refused a trial, was not entitled to a discharge. Indeed the general weight of authority and sound reason concur in holding that, to entitle a prisoner to discharge under sections 4222 and 4223, Revised Statutes 1889, and similar statutes, the laches must have been

on the part of the State through its prosecuting officers (*State v. Marshall*, 115 Mo. 383), and not a failure to try him caused by disagreement of a jury, sickness of the judge or juror, or want of time during the term to try the case, or delay caused by and with the consent of the defendant himself, and when on bail he must demand a trial or resist postponements of his case. *Gallagher v. People*, 88 Ill. 335; *Patterson v. State*, 49 N. J. L. 326. These beneficent provisions of these various statutes were enacted to promote justice and protect the innocent, and not as a shield for the guilty and lawless. Our own law, like that of many of our sister states, provides that when the defendant is on bail (as was the defendant in this case) he is not entitled to a discharge *even at the third term, if the State can show the statutory cause for a continuance.* What then of this plea? Is it not evident that *it is too narrow* in that it fails to negative the fact that the cause had not been continued at the *third term* by the court upon one of the grounds allowed by the statute? Most clearly under no construction of sections 4222, 4223 and 4224, Revised Statutes 1889, was the defendant entitled to a discharge *at the third term if* the State had procured a continuance for one of the causes alleged, and the record produced by defendant to sustain his plea shows that *prior* to demanding his discharge and *indeed we may say as a basis of it, the court had already continued the cause until the next term.* No objection whatever was made to that continuance by the defendant at the time, and it seems to us that invoking the universal practice in this court we are bound to presume that the special judge, knowing that the cause could only be continued without the consent of defendant for certain specified reasons, he granted the continuance upon one of said grounds; in other words, in the absence of evidence to the contrary, that he obeyed

the law rather than violated it. This presumption obtains as to all official actions, and nowhere stronger than in sustaining the judgments of courts of general jurisdiction. In the light of this record it seems to us that the application was obviously insufficient in the Dunklin circuit court in that while it asserted the cause had been delayed for three terms, *it did not aver that the continuance at the third term was not for good statutory cause* as provided in section 4224, and that the plea in bar in the Butler circuit court to the present indictment was likewise insufficient, and the record read to sustain it shows that the Dunklin court had continued the case for a presumably lawful cause, and hence defendant did not sustain his right to a discharge, and this presumption was indulged by this court in *Ex parte Donaldson*, 44 Mo. 149, and by the Supreme Court of Ohio in *Ex parte McGehan*, 22 Ohio St. 442, and by this court in *State v. Marshall*, 115 Mo. 383, and *State v. Steen*, 115 Mo. 474.

Let us consider somewhat more in detail whether at the January term, 1895, of the Dunklin circuit court, the defendant was entitled to his discharge for laches on the part of the prosecution, under the record evidence offered. He was indicted at the May term, 1892, of the Butler court. In the computation of time or terms, for the lapse of which defendant had a right to demand a discharge, the term at which the indictment is found is not to be counted. This was so ruled in *State v. Robinson*, 12 Mo., marginal page 592, top page 390, and that ruling has never been disturbed.

The next term in Butler county was held as required by law in November, 1892. At that term a special judge was selected by agreement of defendant and prosecuting attorney, and a change of venue was awarded to Dunklin county on the application of defendant and defendant admitted to bail, to appear in the Dunklin court.

Up to this time clearly no laches appear on the part of the State.

At the January term, 1893, of the Dunklin court the cause appeared on the docket, but no action whatever was taken in this cause. It does not appear that the special judge put in his appearance at said court. No court having been held by Special Judge Mauldin at said January term, it is plain that no laches can be charged to the State at that term.

At the July term, 1893, of the Dunklin court the special judge assumed his duties and the then prosecuting attorney of Butler county and defendant in his proper person, attended by his counsel, appeared in open court and the record states that "*by agreement of the parties this cause is continued generally.*" Clearly no default occurred on the part of the State up to that time.

By the act redistricting the State into judical circuits and fixing the terms of courts therein, approved April 7, 1892, the terms of the circuit court of Dunklin county were directed to be held on the second Mondays in January and July of each year. So that, the *next* term of the Dunklin court after this cause was "*continued generally,*" by consent, would have occurred on the second Monday in January, 1894. At that term it appears from the entry of record that the prosecuting attorney of Butler county alone appeared in the Dunklin court, and moved the court to reinstate the case on the docket, and permit him to enter a *nolle prosequi,* but the court refused to permit him to do so. The prosecuting attorney then demanded a forfeiture of the defendant's recognizance, and it was refused. The prosecuting attorney then withdrew his motion to reinstate the case on the docket. This action of the court was doubtless based on the established practice in some of the circuits in this State in criminal cases, that when a

cause is "*continued generally,*" it is dropped from the docket, and neither party is required to appear in the cause until the cause is reinstated, of which action the opposite side is entitled to notice. So well established is this practice that while ordinarily the clerk is not required to certify a fee bill in a criminal case until the case has been finally determined, yet when a case is "continued generally" he is required to tax the costs, and certify the same. R. S. 1889, sec. 4411. This cause having been "*continued generally*" at the July term, 1893, by the agreement of the defendant and the prosecuting attorney, the defendant in the absence of notice of the motion to reinstate at the January term, 1894, was not required by the terms of his recognizance to appear at the said term, as, *from the motion to reinstate, it had evidently been omitted from the docket,* and hence the court might properly refuse to forfeit the recognizance.

But while this is true it is just as true that where the said practice obtains in this State in criminal cases, the State likewise is under no obligations to appear at said term, and a failure to do so is not laches. The appearance of the prosecuting attorney to demand *that a nolle prosequi be entered* was in no sense a failure to prosecute, as the case was clearly not on the docket for hearing at said term, and he *had an absolute right, before a jury was impaneled,* to do that without the consent of the defendant, or the court, in the absence of a statutory provision limiting his common law prerogative. *Regina v. Allen,* 1 Best & S. 850; s. c., 9 Cox C. C. 120; *Com. v. Smith,* 98 Mass. 10; *Com. v. Scott,* 121 Mass. 33; *State v. Tufts,* 56 N. H. 137; *Lacey v. State,* 58 Ala. 385; *State v. Hickling,* 45 N. J. L. 152; *Clarke v. State,* 23 Miss. 261; *U. S. v. Shoemaker,* 2 McLean, 114; *S`ate v. Hornsby,* 8 Rob. (La.) 583; *State ex rel. Butler v.*

*Moise*, 48 La. Ann. 109; s. c., 35 L. R. A. 701.　So that no laches as yet appears in the history of this cause.

At the July term, 1894, no action whatever was taken in the cause, and it was as if no court was held so far as this case was concerned, and upon either of *three* well settled grounds, the State could not be charged with a failure to prosecute at said term: *First*, because the cause, having been "continued generally," and not having been reinstated, it was not required of either the State or defendant to appear, and hence no default in not appearing; *second*, as no record was made in the cause, it must be presumed that the special judge for good cause was not present to hold the court, and no failure of the judge to hold said court can be charged as laches on the part of the State; or, *third*, the defendant had not appeared as required by his bond, and no step could be taken in his absence except a forfeiture.　*There is no evidence that the defendant was present at said term of court, and there is no averment that he was, in his plea in bar.*

The next and last term in Dunklin county, to wit, January term, 1895, shows *the only continuance at the instance and cost of the State.*

With these facts, all affirmatively appearing by the record of the court in which he was presiding, the special judge made a finding at that term "that said defendant Charles E. Wear has not been brought to trial before the end of the third term of said court of Dunklin county, after the indictment was preferred, and after the cause was removed from Butler county to the Dunklin county circuit court, and that the delay did not happen on defendant's application, *but at the instance and on the application of the State,* and that said delay was not occasioned by the want of time on the part of the court to try said cause at the third term, or any prior term."

*This finding is contradicted by the record made under the eye, and presumably by the direction, of the special judge who made it.* Courts of record only speak by their records. The circuit court is a court of record, and is required by statute to keep just and faithful records of its proceedings. R. S. 1889, sec. 3225; *Maupin v. Franklin Co.*, 67 Mo. 327; *Johnson Co. v. Wood*, 84 Mo. 489.

The continuance of a cause is an important proceeding by a court in any case, especially in a felony case, and the action of the court in ordering a continuance can only appear by its record entry, if affirmative action is taken by it, or by its failure to make any entry at all, if no action was taken, but it is utterly incompetent to prove the terms upon which a continuance was granted, and upon whose application it was made, *by verbal testimony.* What was done must appear by the record, and that record can not be impeached by parol, but can only be contradicted by its own recitals. Recognizing to the fullest extent that the rulings and acts of a special judge as such are entitled to the same credit that would be accorded to a regular judge of said court, we hold that the judgment of a court presided over by a regular judge may be impeached by its own record.

Thus in *Cloud v. Inhabitants of Pierce City*, 86 Mo. 357, there was a recital that the defendant had been duly served with process but when the service was produced it proved to be worthless, and this court held the judgment void and a nullity. To the same effect are *Milner v. Shipley*, 94 Mo. 106; *Crow v. Meyersieck*, 88 Mo. 411, and *Bell v. Brinkmann*, 123 Mo. 270. So that even a court of the great powers and general jurisdiction of our circuit court can not contradict its own solemn utterances and demand that a record so made shall be conclusive upon other courts.

In this case no more conclusive record evidence could be produced than that furnished by the record of the circuit court of Dunklin county, *showing affirmatively that as a matter of fact, the State had applied for and obtained but one continuance in the case of State v. Wear.*

But we are met at this point with the serious *question that Special Judge Mauldin had the power to discharge* the defendant, and it is immaterial that in so doing he was guilty of an arbitrary exercise of the judicial power with which he was clothed. The power to grant pardons and reprieves is vested by the organic law of Missouri in the Governor alone, and then only after conviction. ‾ Sec. 8, art. V, Const. of Mo. 1875.

But if the practice in this case can be sustained, a judge of the circuit court, or other criminal court of this State having jurisdiction in prosecutions for felony, may virtually grant a defendant a pardon by discharging him before he has ever been placed in jeopardy of life or limb or liberty, and before the State has had a reasonable opportunity of bringing him to trial, and may disregard its own record and its own recitals to the contrary, and find that a prisoner or defendant has been unjustly denied a trial for three terms, and discharge him, and every other court and authority in the State is powerless forever afterward to interfere however heinous the crime, or evident the guilt of the defendant. I say it may do so even at the first term, if the contention be sound, because the *jurisdiction* is vested then as well as later, and no greater wrong is done by so finding *in defiance of its record, at* its first term, than is committed when as in this case it finds at a *third* term that the delay was caused by the State *when its own record affirmatively shows the contrary.* Conceding every presumption in favor of the jurisdic-

tion of the court when the contrary does not *appear from its own record*, it does seem to us it can not be upheld when the facts upon which the law confers the power to discharge the prisoner *are negatived upon its own record*, and the party who procured that same record to be made, is invoking it as a protection. Unquestionably, as the circuit court had the power under some circumstances to discharge the prisoner, I agree that in a collateral proceeding the judgment or order of the court can not be impeached by evidence *aliunde its own record*, but when the record of the court itself discloses *affirmatively all the evidence* upon which the court could find the facts which would justify a discharge, and that evidence is known to the party who induces the court to make such an order, and he knows that the court can not consistently with such evidence lawfully render such judgment, or make such order, then all presumption in favor of such discharge is repelled, and if the facts of record upon which it is based, show it was entered *without the sanction of and in defiance of the law*, it must be held nugatory.

In *Ex parte Donaldson*, 44 Mo. 154, the defendant had demanded his discharge after the cause had been continued, but the court said: "Every inference is to be made in support of its rulings and *we are bound to believe that the facts existed which, according to law, justified the continuance.* It is true, a motion was subsequently made during the same term to discharge the accused, but there is no evidence before us *that the continuance was set aside, and without that being done the court had no power to act on the* motion." *State v. Marshall*, 115 Mo. 383; *State v. Steen*, 115 Mo. 474. Upon this record it appears beyond the cavil of a doubt that immediately preceding this application for a discharge this cause had been continued, the presumption being that it was for a lawful cause. Then,

without setting aside that continuance, and without finding that it had been improvidently granted for other than the statutory causes enumerated in section 4224, the court attempted to discharge the prisoner. Did this order have that effect under the circumstances? While a court may set aside a continuance during the term, it is never done without reasonable notice to the party at whose instance it was granted. Any other practice would be palpably unjust. The general rule of law is that the order of continuance until set aside, precludes and postpones further action in the cause until the order has expired, save as to collateral matters. The order in the Dunklin court made for a discharge, directly impugned the order of continuance previously entered of record, and should be held to have been out of the power of the court, as was held in *Donaldson's* case, 44 Mo. 149, and for the more satisfactory reason that it leaves nothing for presumption in its favor, but rests upon the inconclusive and insufficient finding that the continuances had been granted on the application of the State, whereas the State according to the positive statute was entitled to a fourth term upon a proper showing for a continuance, *and that continuance had been granted.* So that, conceding everything to the discharge pleaded and proven, it did not establish that immunity from the prosecution for which it was offered. The burden, as already said, was on defendant and he has failed to sustain it *and the State has established "nul tiel record."* The pretended discharge was without the sanction of law and should be held to present no obstacle to a lawful trial for the offense charged. The effect of a record must be gathered from the whole record, not a partial extract, because the partial extract may bear a very different import from the whole taken together. Nor can one part be ascribed any greater importance or

sanctity than other portions of the same. *Philipson v. Bates*, 2 Mo. 95. We can not agree that any magistrate, high or low, may thus make a recital of record which contradicts all other parts of his record in the same case, and that it shall be accorded the same respect that judgments founded upon law and evidence are accorded by the courts. We think the circuit court correctly held that the plea was not sustained by the record by which alone it could be made good.

An examination of the other assignments discloses no reversible error and in my opinion the judgment should be affirmed. ROBINSON, J., concurs in my views.